UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FCCI INSURANCE COMPANY,   CASE NO.   6:10-cv-210-Orl-31KRS

    Plaintiff,

v.

AMERICAN CASUALTY COMPANY OF
READING PENNSYLVANIA and
SOUTHERN-OWNERS INSURANCE COMPANY,

    Defendants.
_____/

## COMPLAINT

Plaintiff, FCCI Insurance Company, subrogee of Dream Acres Enterprises, Inc. and assignee of Robert and Patty Hach, sues Defendants, American Casualty Company of Reading Pennsylvania and Southern-Owners Insurance Company, and says:

### JURISDICTION AND PARTIES

1. This is an action for equitable subrogation and declaratory relief pursuant to 28 U.S.C. §2201.

2. This Court has jurisdiction pursuant to 28 U.S.C. §1332 based on the diversity of the parties and the provisions of the Federal Declaratory Judgment Act to declare the rights and obligations of the parties with respect to the claim and policies detailed below.

3. The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees. Venue in this Court is proper pursuant to 28 U.S.C. §1391 because the property at issue and relevant events underlying this suit are located and occurred, respectively, in Brevard County.

4. FCCI is an active Florida corporation whose principal place of business is in Sarasota, Florida.

5. American Casualty is an active Pennsylvania corporation whose principal place of business is in Chicago, Illinois.

6. Southern-Owners is an active Michigan corporation whose principal place of business is in Lansing, Michigan.

## GENERAL ALLEGATIONS

7. On or about 4 February 2005, FCCI issued Dream Acre Enterprises, Inc. liability policy number GL 00032951. A copy of the FCCI policy is attached as exhibit 1.

8. On or about 28 April 2004, American Casualty issued Dream Acre liability policy number B 1073777675, whose term extended to 28 April 2005. FCCI is informed and believes that the policy in its possession, attached as exhibit 2, is a complete copy of the American Casualty policy.

9. On or about 4 February 2006, Southern-Owners issued Dream Acre liability policy number 064612-20679576-06, whose term extended to 4 February 2007. FCCI is informed and believes that the policy in its possession, attached as exhibit 3, is a complete copy of the Southern-Owners policy.

10. Dream Acre at all material times was in the business of preparing, excavating and grading land in preparation for, among other things, construction of single family houses.

11. In or about October 2004, Robert and Patty Hach, owners of a lot at 3460 Canaveral Groves Boulevard, Cocoa, Brevard County, Florida, began building a residence on their lot. In or around July 2004, while its liability policy with American Casualty was in effect, Dream Acre gave the Haches a proposal for site preparation which included clearing, debris hauling, du-mucking, and supplying and placing fill dirt, which proposal was accepted.

12. Dream Acre prepared the site- completing its work in or around November 2004- while its liability policy with American Casualty was in effect- and the Hach house was finished in the

summer of 2005. A certificate of occupancy was issued in or around June 2005 and the Haches moved into the house. In or around July 2005, while Dream Acre's liability policy with FCCI was in effect, the Haches noticed cracks in their house walls. These existing cracks worsened and new ones appeared, as well as substantial dislocation of floors and walls, which defects manifested themselves while Dream Acre's liability policy with Southern-Owners was in effect.

13. The Haches hired an engineer who determined that their house had suffered settlement damage that was caused by Dream Acre's failure to properly compact the soil in preparation for construction, which settlement had begun when the house was first being built, and was ongoing.

14. The Haches incurred significant expense fixing their house and turned to Dream Acre and its carriers for reimbursement, ultimately hiring Barry Baker of Bogin, Munns to represent them in their effort to get compensation for the damage. Mr. Baker attempted several times to get American Casualty and Southern-Owners to assume compensability of his clients' claim and pay some of the Haches' damages. American Casualty and Southern-Owners denied the Haches' claim and failed to pay the Haches any sum of money. The Haches finally filed suit to recover damages in the amount of $368,929.43.[1]

15. Only FCCI indemnified Dream Acre and accepted compensability of the Haches' claim, paying the Haches $230,000.00 in full satisfaction of the claim, thereby becoming subrogated to all of Dream Acre's rights and remedies against its other insurers. In consideration of FCCI's payment, the Haches executed a release in October 2009 that released Dream Acre and FCCI from further liability as a result of the Haches' property damage. A copy of this release is attached as exhibit 4.

16. FCCI then tried to get contribution from American Casualty and Southern-Owners for the

---

[1] *Hach v. Dream Acre Enterprises, et al.*, Brevard County Circuit Court case number 05-2009-CA 30374 XXXX-XX.

Haches' damages which FCCI had paid in full. These efforts were unavailing and neither carrier has indemnified Dream Acre or contributed any sum toward the damages that FCCI was required to pay the Haches because of these carriers' insured's defective work.

17. All conditions precedent to this action have occurred, or been waived or performed.

### COUNT I: EQUITABLE SUBROGATION (AMERICAN CASUALTY)

18. FCCI here realleges paragraphs 1-17 except 6 and 9.

19. Dream Acre was an insured under the FCCI and American Casualty policies which both provided coverage to Dream Acre for property damage arising from Dream Acre's work.

20. American Casualty, despite demand, failed and refused to respond to Dream Acre's requests to defend and indemnify it in connection with the Haches' claim. In view of American Casualty's continuing failure to defend and indemnify Dream Acre, FCCI- not as a volunteer and in protection of its interest- paid $230,000.00 in satisfaction of the Haches' claim.

21. FCCI's payment settled all claims that the Haches made or could have made against Dream Acre. American Casualty contributed nothing toward the indemnity payment FCCI made to the Haches.

22. Dream Acre has an existing, assignable cause of action against American Casualty for breach of contract that Dream Acre could have asserted for its own benefit had FCCI not defended and indemnified Dream Acre in connection with the Haches' claim. As such, and by virtue of the "Transfer of Rights of Recovery Against Others to Us" provision of the FCCI policy, FCCI is subrogated to Dream Acre's claim against American Casualty.

23. FCCI paid off the entire obligation that by contract should have been borne in part by American Casualty. As such, FCCI is entitled to equitable subrogation and recovery from American Casualty of the sum the latter should have paid in connection with the Haches' claim.

24. Subrogation would not work any injustice to the rights of a third party.

WHEREFORE, Plaintiff, FCCI Insurance Company, requests the entry of judgment against Defendant, American Casualty Company of Reading Pennsylvania, for damages according to proof but in an amount exceeding the jurisdictional limit of the Court; interest; costs; attorney's fees pursuant to Section 627.428 of the Florida Statutes, and other appropriate relief.

## COUNT II: EQUITABLE SUBROGATION (SOUTHERN-OWNERS)

25. FCCI here realleges paragraphs 1-17 except 5 and 8.

26. Dream Acre was an insured under the FCCI and Southern-Owners policies which both provided coverage to Dream Acre for property damage arising from Dream Acre's work.

27. Southern-Owners, despite demand, failed and refused to respond to Dream Acre's requests to defend and indemnify it in connection with the Haches' claim. In view of Southern-Owners' continuing failure to defend and indemnify Dream Acre, FCCI- not as a volunteer and in protection of its interest- paid $230,000.00 in satisfaction of the Haches' claim.

28. FCCI's payment settled all claims that the Haches made or could have made against Dream Acre. Southern-Owners contributed nothing toward the indemnity payment FCCI made to the Haches.

29. Dream Acre has an existing, assignable cause of action against Southern-Owners for breach of contract that Dream Acre could have asserted for its own benefit had FCCI not defended and indemnified Dream Acre in connection with the Haches' claim. As such, and by virtue of the "Transfer of Rights of Recovery Against Others to Us" provision of the FCCI policy, FCCI is subrogated to Dream Acre's claim against Southern-Owners.

30. FCCI paid off the entire obligation that by contract should have been borne in part by Southern-Owners. As such, FCCI is entitled to equitable subrogation and recovery from Southern-Owners of the sum the latter should have paid in connection with the Haches' claim.

31. Subrogation would not work any injustice to the rights of a third party.

WHEREFORE, Plaintiff, FCCI Insurance Company, requests the entry of judgment against Defendant, Southern-Owners Insurance Company, for damages according to proof but in an amount exceeding the jurisdictional limit of the Court; interest; costs; attorney's fees pursuant to Section 627.428 of the Florida Statutes, and other appropriate relief.

### COUNT III: DECLARATORY RELIEF (AMERICAN CASUALTY)

32.  FCCI here realleges paragraphs 1-17 except 6 and 9.

33.  The American Casualty policy includes the following provisions:

**AMENDMENT OF INSURING AGREEMENT-
KNOWN OR CONTINUING INJURY OR DAMAGE**

**SECTION 1- COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY
DAMAGE LIABILITY**

    **1. Insuring Agreement**

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…

        b.    This insurance applies to "bodily injury" and "property damage" only if:

            (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

            (2)    The "bodily injury" or "property damage" occurs during the policy period; and

            (3)    With respect to "bodily injury or "property damage" that continues, changes or resumes so as to occur during more than one policy period, both of the following conditions are met:

                (i) Prior to the policy period, no Authorized insured knew that the "bodily injury" or "property damage" had occurred, in whole or in part; and

                (ii) During the policy period, an Authorized insured

> first knew that the "bodily injury" or "property damage" had occurred, in whole or in part.
>
> For purposes of this Paragraph 1.b.(3) only, if (a) "bodily injury" or "property damage" that occurs during this policy period does not continue, change or resume after the termination of this policy period; and (b) no Authorized insured first knows of this "bodily injury" or "property damage" until after the termination of this policy period, then such first knowledge will be deemed to be during this policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any Authorized insured includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period…

## SECTION V- DEFINITIONS

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions…

16. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work"…

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it…

22. "Your work":

    a. Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

      (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance of use of "your work"...

## SECTION IV-COMMERCIAL GENERAL LIABILITY CONDITIONS

**4.**   **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a.**   **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b.**   **Excess Insurance**

This insurance is excess over:

    (1)    Any of the other insurance, whether primary, excess, contingent or on any other basis:

        (a)    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        (b)    That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the Owner;

        (c)    That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        (d)    If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I- Coverage A- Bodily Injury And Property Damage Liability.

    (2)    Any other primary insurance available to you covering liability for

damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

[text omitted]

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

34. It is the position of FCCI that the Haches' claim against Dream Acre should have been assumed as compensable by American Casualty, which should have contributed to payment of the Haches' damages pursuant to the liability policy American Casualty issued to Dream Acre.

35. An actual, present and justiciable controversy exists between FCCI and American Casualty as regards the obligations of American Casualty pursuant to its policy with respect to the Haches' claim, which controversy warrants the entry of a declaratory judgment by this Court.

WHEREFORE, Plaintiff, FCCI Insurance Company, requests that the Court:

(i) find and declare that the American Casualty policy provides Dream Acre coverage in connection with the Haches' claim;

(ii) find and declare that American Casualty breached its duty to indemnify Dream Acre in connection with the Haches' claim;

(iii) find and declare that American Casualty has a duty to pay, on behalf of Dream Acre, a pro rata portion of the sum that FCCI paid on behalf of Dream Acre for the property damage sustained by the Haches, and

(iv) award FCCI its attorneys' fees and costs incurred in this action and other appropriate

Morris & Morris, P.A.
777 South Flagler Drive, Suite 800- West Tower, West Palm Beach, Florida 33401 Tel. 561.838.9811 Fax 561.828.9351

relief.

## COUNT IV: DECLARATORY RELIEF (SOUTHERN-OWNERS)

36. FCCI here realleges paragraphs 1-17 except 5 and 8.

37. The Southern-Owners' policy includes the following provisions:

**AMENDMENT OF INSURING AGREEMENT-
KNOWN INJURY OR DAMAGE**

**SECTION 1- COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY
DAMAGE LIABILITY**

    **1. Insuring Agreement**

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…

        b.    This insurance applies to "bodily injury" and "property damage" only if:

            (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

            (2)    The "bodily injury" or "property damage" occurs during the policy period; and

            (3)    Prior to the policy period, no insured… knew or should have known that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured… knew or should have known, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**SECTION V- DEFINITIONS**

    9.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions…

11. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work"...

12. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it...

15. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   "Your work" includes:

      (a) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"...

## SECTION IV-COMMERCIAL GENERAL LIABILITY CONDITIONS

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

   This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

   This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

    (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

[text omitted]

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

38. It is the position of FCCI that the Haches' claim against Dream Acre should have been assumed as compensable by Southern-Owners, which should have contributed to payment of the Haches' damages pursuant to the liability policy Southern-Owners issued to Dream Acre.

39. An actual, present and justiciable controversy exists between FCCI and Southern-Owners as regards the liability of Southern-Owners pursuant to its policy, which controversy warrants the entry of a declaratory judgment by this Court.

WHEREFORE, Plaintiff, FCCI Insurance Company, requests that the Court:

(i) find and declare that the Southern-Owners policy provides Dream Acre coverage in connection with the Haches' claim;

(ii) find and declare that Southern-Owners breached its duty to indemnify Dream Acre in connection with the Haches' claim;

(iii) find and declare that Southern-Owners has a duty to pay, on behalf of Dream Acre, a

Morris & Morris, P.A.
777 South Flagler Drive, Suite 800- West Tower, West Palm Beach, Florida 33401 Tel. 561.838.9811 Fax 561.828.9351

pro rata portion of the sum that FCCI paid on behalf of Dream Acre for the property damage sustained by the Haches, and

(iv) award FCCI its attorneys' fees and costs incurred in this action and other appropriate relief.

Dated 28 January 2010                           Respectfully submitted,

                                                MORRIS & MORRIS, P.A.
                                                Attorneys for FCCI Insurance Company
                                                777 South Flagler Drive
                                                Suite 800- West Tower
                                                West Palm Beach, Florida 33401
                                                Tel. 561.838.9811; Fax. 561.828.9351

                                                By:_____
                                                Michael R. Morris, FBN 70254
                                                Trial Counsel
                                                mrmorris@morris-morris.com